IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTH DIVISION AT COVINGTON
CASE NO: _____

**JENNIFER WILSON HURST**                                                    **PLAINTIFF**

**v.**                                                              *Electronically filed*

**SYNCREON, US INC.**                                                    **DEFENDANT**
a/k/a **SYNCREON AMERICA INC.**
2851 High Meadow Circle, Suite 250
Auburn Hills, MI 48236
**SERVE:**     CSC-Lawyers Incorporating Service Co.
               421 West Main Street
               Frankfort, KY 40601

---

**COMPLAINT WITH JURY DEMAND**

---

**INTRODUCTION**

1.   Plaintiff Jennifer Wilson Hurst was at all times relevant to the facts of this Complaint an employees of syncreon US, Inc., and, during all relevant time periods, was an employee of the company, primarily assigned to its Hebron, Boone County, Kentucky plant. Throughout the period of her employment, until she was fired in June of 2013, she was repeatedly subjected to a sexually hostile environment by her co-workers, and otherwise discriminated against in the terms and conditions of her employment because of her gender. Additionally, she was retaliated against after she complained about the sexually hostile work environment and discrimination in the terms and conditions of her employment. She seeks compensation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, and pursuant to KRS 344.450.

**JURISDICTION AND VENUE**

2. Plaintiff filed her charge of discrimination with the EEOC on or about August 19, 2013, and received her right to sue notice on March 21, 2014.  She brings this action pursuant to 42 U.S.C. §2000e *et seq.*  Thus, this Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1343 as these claims arise under the laws of the United States.  This Court has supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S. C. §1367, as these claims arise out of the same set of facts and circumstances, and form part of the same case or controversy.

3. Venue is proper in the Eastern District of Kentucky pursuant to 28 U.S.C. §1391(b) as all or a substantial part of the events giving rise to these claims occurred in Boone County, Kentucky.

**PARTIES**

4. Plaintiff Jennifer Wilson Hurst is a resident and citizen of Boone County, Kentucky.  At all times relevant to the facts giving rise to this Complaint, Plaintiff was employed in a Human Resources position for Defendant syncreon US Inc.

5. Defendant syncreon US Inc. (syncreon) is incorporated under the laws of the state of Michigan and regularly conducts business in Kentucky at a plant located in Boone County, Kentucky.  Defendant also operates facilities in other states, including for purposes of this Complaint, plants in York, PA and Belvedere, IL.  At all times relevant hereto, Defendant syncreon was an employer within the meaning of 42 U.S.C. §2000e *et seq.* And KRS 344.450, and employed more than a total of 1000 employees during each of 20 calendar weeks in the current year or preceding year.

## **FACTS**

6. At all times relevant hereto, Plaintiff Jennifer Wilson Hurst, a female, was employed in a human resources capacity by Defendant syncreon. She began working for the company on May 12, 2010. During Plaintiff's employment, Terry Conroy, a male, was a supervisor of Plaintiff.

7. From the earliest days of her employment with Defendant, workers at the Hebron facility made repeated remarks of a sexual nature to or in the presence of Plaintiff. Plaintiff properly rebuffed these remarks to the person or persons making them and also reported them to her supervisor/plant manager.

8. In 2011, Plaintiff was ask to work at Defendant's plant in York, PA, in order to assist in resolving HR issues at the plant.

9. While assigned to the PA plant, Plaintiff asked Defendant's HR managers in Memphis, TN and Belvidere, IL for advice on how to handle her supervisor at the Hebron location. They both advised her to report him to Traci Wolff, Human Resources Director Plaintiff knew that Wolff and Conroy were good friends, and she feared retaliation if she followed this advice.

10. While assigned to the York, PA plant, Louis Wickard, the plant's Union Steward, began making sexually-tinged overtures to her, indicating that he was interested in a relationship outside of work. Plaintiff declined or ignored all such overtures.

11. While assigned to the York, PA plant, in April of 2011, Plaintiff expressed an interest in becoming the HR manager for the company at that location. She was encourage by syncreon management to pursue this interest, and to also consider the same position at a

company plant in Tuscaloosa, AL.

12.     At about this same time, plant management in York, PA told the management team that Plaintiff would be named that plant's HR manager.

13.     In early May of 2011, Plaintiff notified Wolff that she was interested in the HR position in York, PA.

14.     The next day, Wolff e-mailed Plaintiff to inform her that Wickard filed a sexual harassment complaint against her that was supported by another employee who was a friend of Wickard's.  The accusations were untrue.

15.     In conversations with Wolff about the complaint, Plaintiff informed her of an inappropriate relationship between two employees, a female based in Hebron, KY and a male based in York, PA.  Wold asked her for a statement giving her side of the story.

16.     Wolff then informed Plaintiff that the sexual harassment complaint against her ended any chance that she would be promoted to the HR position in York.

17.     When Plaintiff asked Wolff for advice on how to handle inappropriate comments made to her by other employees while in the plants, Wolff advised her that she needed to change how she comported herself and further suggested that she get counseling to help her deal with the harassment.

18.     Before completing her statement for Wolff, Plaintiff asked Wolff for copies of the complaints filed against her.  This request was denied.

19.     When Plaintiff returned to her position at the Hebron plant, inappropriate remarks and conduct directed toward her continued both on work premises and at events with employees outside of the work setting.  Plaintiff continuously rebuffed these acts.

20. In July of 2011, Wolff asked Plaintiff to work on a temporary assignment at the Belvidere, IL plant when the HR manager there quit. Wolff indicated it was a chance for Plaintiff to "prove herself" and that if things worked out well she would consider Plaintiff for the position on a permanent basis.

21. While assigned to Belvidere, a constant stream of spoken and written inappropriate remarks were directed at or about Plaintiff, primarily by laborers in the plant.

22. The same conduct occurred during 2012 - 2013 when she returned to Hebron. Plaintiff rebuffed these comments, and reported them to plant manager Conroy, who did nothing to intervene or to stop the conduct.

23. In March of 2012, Plaintiff reported every incident to Rachel Kight, syncreon's Regional HR Manager. Among her complaints was the fact that she appeared to be held to a different standard than male plant managers.

24. In May of 2012, Brett Bucher, the Regional HR Director in Belvidere, asked Plaintiff to apply for that plant's HR Manager position. He indicated he would support that application.

25. Plaintiff indicated an interest in the position, but then noted that the position had been posted on-line internally.

26. Plaintiff asked Bucher for an explanation, and all he knew was that Wolff directed him to post the position. The position was filled by a male that Plaintiff had helped to train in HR duties.

27. In May and June of 2012, Wolff also worked at the Belvidere plant. One evening after work, Plaintiff, Wolff and another employee were relaxing in one of their hotel rooms, and

drinking wine. Wolff appeared to be under the influence of alcohol, and at one point, impulsively kissed Plaintiff. This made Plaintiff very uncomfortable.

28. While on temporary assignment in Belvidere, Plaintiff helped recruit and train multiple management employees, including ones who got positions that were supposedly available to her.

29. In late June of 2012, Bucher again offered Plaintiff the HR manager position in Belvidere. After careful consideration, Plaintiff declined the offer, for both professional and personal reasons.

30. In March of 2013, Plaintiff was investigating a sexual harassment complaint against a male employee at the Hebron facility. She was removed from this investigation when this employee accused her of making sexual advances toward him. This accusation was untrue.

31. During this same period of time, Plaintiff reported numerous incidents of sexually inappropriate comments made to and about her to Rachel Kight.

32. On April 10, 2013 Plaintiff learned she was not going to receive an expected bonus for the work she performed in Belvidere, as promised. When Plaintiff asked why, Kight told her that the company decided it would be inappropriate to give her this bonus while she was being investigated for a sexual harassment complaint.

33. During this conversation, Kight asked Plaintiff to sign a Personal Improvement Plan. Plaintiff refused.

34. On April 12, 2013, Plaintiff resigned her position with syncreon due to mental stress and anxiety.

35. Corporate management asked her to rescind her resignation, and she agreed to do

so on April 13.

36. The next day Eric Schneider asked Plaintiff to again submit a full written report of all of her sexual harassment complaints.

37. Plaintiff initially refused, since prior complaints had gone nowhere. In e-mail exchanges with Eric about this issue, Plaintiff revealed that she had recordings in support of her version of events.

38. In mid to late April of 2013, Plaintiff conducted training on syncreon's sexual harassment policies at the Hebron plant in response to employee complaints. At the conclusion of the training, two male employees directed sexually tinged remarks or conduct toward her.

39. On April 30, 2013, Eric indicated he wanted to meet Plaintiff in person to discuss her concerns. She agreed to do so.

40. However, the meeting could not be scheduled, and Eric again insisted that Plaintiff submit a full written report. She did so on May 8, 2013.

41. Plaintiff was on an approved vacation from May 16 through May 28, 2013.

42. Syncreon terminated Plaintiff from her job on June 13, 2013.

43. The conduct of Defendants in terminating Plaintiff from her employment with syncreon was motivated by, and taken in direct retaliation against Plaintiff because of all of the complaints she had made about the sexually hostile work environment and sexual harassment,

44. No male workers were subjected to the same sexually hostile and discriminatory work environment as Plaintiff and other female employees.

45. As a direct and proximate result of the sexual discrimination and sexually hostile

work environment and retaliation to which Plaintiff was subjected, as described above, Plaintiff suffered economic loss including reduction in compensation and benefits, denial of raises and denial of promotion or advancement that would earn her additional money. The extent of these damages will be determined by the evidence at trial. Plaintiff continues to incur these damages as a direct result of the sexual discrimination, harassment and retaliation for her complaints of discrimination as described above.

46. As a direct and proximate result of Defendant's discriminatory, sexually hostile and retaliatory conduct as described above, Plaintiff has suffered serious emotional distress, mental anguish and humiliation while employed at syncreon, which caused disruption and interfered with her ability to perform duties while employed at syncreon. Plaintiff will continue to suffer emotional distress, mental anguish and humiliation for the foreseeable future, all to her damage in an amount to be determined by the evidence at trial.

47. The conduct of Defendants as described above was intentional, malicious and in willful and wanton disregard of Plaintiff's rights as protected by federal and state civil rights laws and state common law, entitling Plaintiff to an award of punitive damages in an amount to be determined by the evidence at trial.

## COUNT I - 42 U.S.C. §2000e
## Sexual Harassment and Sex Discrmination

48. Plaintiff re-alleges and incorporates by reference all allegations set forth above.

49. Plaintiff was subjected to uninvited and unwelcomed sexual harassment by Defendants and subjected to a sexually hostile work environment while employed by the Defendants as described in detail above. Such acts were directed to Plaintiff because of her gender and in retaliation for her complaints about discrimination and the sexually hostile work

environment.

50. The conduct and acts described above created a sexually hostile and abusive work environment which was severe, pervasive and substantially interfered with Plaintiff's ability to perform her duties. Defendants deprived Plaintiff of advancement opportunities and other work opportunities which would increase her pay because of her gender and in retaliation for her complaints about discrimination and the sexually hostile work environment. Through Plaintiff's complaints and other sources, Defendants were aware of the sexually hostile work environment and to the discriminatory conduct described above, yet Defendant syncreon for a substantial period of time took no action to protect plaintiff and failed to take reasonable action at any time to protect Plaintiff from the discrimination and sexually hostile work environment described above.

51. As a direct result of the sexually hostile work environment, gender discrimination and retaliatory conduct to which Plaintiff was subjected as described above, Plaintiff has suffered both economic loss in the form of lost or diminished wages and benefits and has also suffered severe emotional injuries including humiliation, emotional and financial distress and mental anguish all to her damages in an amount to be determined by the evidence at trial.

52. Defendant's conduct as described above violates Plaintiff's right not to be subject to gender discrimination and sexual harassment and a sexually hostile work environment in violation of 42 U.S.C. §2000e *et seq.*

### COUNT II - 42 U.S.C. §2000e
### Retaliation

53. Plaintiff re-alleges and incorporates the allegations set forth above.

54. Defendant's conduct in retaliating against Plaintiff by terminating her

employment and denying her job opportunities that would increase her pay, and subjecting her to baseless disciplinary action, all motivated by and directly resulting from Plaintiff's complaints of the sexually hostile work environment, sexual harassment and discrimination as described above constituted unlawful retaliation in violation of Plaintiff's rights secured by 42 U.S.C. §2000e *et seq*.

55. As a direct result of the sexually hostile work environment, gender discrimination and retaliatory conduct to which Plaintiff was subjected as described above, Plaintiff has suffered both economic loss in the form of lost or diminished wages and benefits and has also suffered severe emotional injuries including humiliation, emotional and financial distress and mental anguish all to her damages in an amount to be determined by the evidence at trial.

### COUNT III - KRS 344.450
### (Sexual Harassment and Discrimination)

56. Plaintiff re-alleges and incorporates the allegations set forth above.

57. Plaintiff was subjected to uninvited and unwelcomed sexual harassment by the Defendants and subjected to a sexually hostile work environment while employed by the Defendants as described in detail above. Such acts were directed to Plaintiff because of her gender and in retaliation for her complaints about discrimination and the sexually hostile work environment.

58. The conduct and acts described above created a sexually hostile and abusive work environment which was severe, pervasive and substantially interfered with Plaintiff's ability to perform her duties. Defendants deprived Plaintiff of advancement opportunities and other work opportunities which would increase her pay because of her gender and in retaliation for her complaints about discrimination and the sexually hostile work environment. Through Plaintiff's

complaints and other sources, Defendants were aware of the sexually hostile work environment and to the discriminatory conduct described above, yet Defendant syncreon for a substantial period of time took no action to protect plaintiff and failed to take reasonable action at any time to protect Plaintiff from the discrimination and sexually hostile work environment described above.

59. As a direct result of the sexually hostile work environment, gender discrimination and retaliatory conduct to which Plaintiff was subjected as described above, Plaintiff has suffered both economic loss in the form of lost or diminished wages and benefits and has also suffered severe emotional injuries including humiliation, emotional and financial distress and mental anguish all to her damages in an amount to be determined by the evidence at trial.

60. Defendant's conduct as described above violates Plaintiff's right not to be subject to gender discrimination and sexual harassment and a sexually hostile work environment in violation of KRS 344.010 *et seq.,* thus giving rise to her claims under KRS 344.450.

### COUNT IV - KRS 344.450
### Retaliation

61. Plaintiff re-alleges and incorporates the allegations set forth above.

62. Defendant's conduct in retaliating against Plaintiff by terminating her employment and denying her job opportunities that would increase her pay, and subjecting her to baseless disciplinary action, all motivated by and directly resulting from Plaintiff's complaints of the sexually hostile work environment, sexual harassment and discrimination as described above constituted unlawful retaliation in violation of Plaintiff's rights secured by KRS 344.010 *et seq.,* thus giving rise to her claims under KRS 344.450.

63. As a direct result of the sexually hostile work environment, gender discrimination

and retaliatory conduct to which Plaintiff was subjected as described above, Plaintiff has suffered both economic loss in the form of lost or diminished wages and benefits and has also suffered severe emotional injuries including humiliation, emotional and financial distress and mental anguish all to her damages in an amount to be determined by the evidence at trial.

## COUNT V
### (Punitive Damages)

64. Plaintiff re-alleges and incorporates the allegations set forth above.

65. Defendant's conduct as described in detail above, occurred in intentional, malicious and wanton disregard of Plaintiff's rights as secured by Federal and State Civil Rights Acts and by state common law entitling Plaintiff to an award of punitive damages in an amount to be determined by the evidence at trial.

WHEREFORE, Plaintiff demands judgment against all Defendants as follows:

A. That the Court enter judgment and order enjoining Defendants from engaging in any additional unlawful conduct as described in the Complaint and requiring Defendants to reinstate Plaintiff.

B. That Plaintiff be awarded back and front pay and compensatory damages in an amount consistent with the evidence at trial.

C. That Plaintiff be awarded punitive damages in an amount to be determined by the evidence at trial.

D. That Plaintiff be awarded her costs and reasonable attorney fees and all other relief to which she may appear entitled.

Respectfully submitted,

/S/ SUZANNE CASSIDY
SUZANNE CASSIDY (KY 85134) (OH 0062355)
O'HARA, RUBERG, TAYLOR, SLOAN & SERGENT
25 Town Center Boulevard, Suite 201
Covington, KY 41017
Tel: (859) 331-2000
Fax: (859) 578-3365
Email: scassidy@ortlaw.com
ATTORNEY FOR PLAINTIFF

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact.

/S/ SUZANNE CASSIDY
SUZANNE CASSIDY (KY 85134) (OH 0062355)